Leslie C. LEWIS, Appellant,

v.

EXXON COMPANY, U.S.A., H & H Trucking Company, et al.,
Appellees.

No. 08–89–00080–CV.

Court of Appeals of Texas,
El Paso.

Nov. 1, 1989.

Opinion on Motions for Rehearing
Dec. 13, 1989.

Nicholas Vincent, Houston, for appellee, Exxon Co., U.S.A.

James E. Ross, Houston, for appellee, H & H Trucking Co.

G. Robert Friedman, Greg Denlinger, Friedman & Associates, P.C., Houston, for appellant, Leslie C. Lewis.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This case involves cross-appeals from a final judgment in a personal injury lawsuit. Leslie C. Lewis ("Lewis"), Plaintiff below, appeals from an adverse change of venue ruling. Exxon Company, U.S.A. ("Exxon U.S.A.") a division of Exxon Corporation ("Exxon Corp."), complains of the trial court's denying Exxon U.S.A. a settlement credit of $1.2 million, in denying its motion to sever a settling defendant prior to trial, and in denying it a post-verdict credit. H & H Trucking Company ("H & H") claims the trial court erred in failing to award H & H a judgment against Exxon U.S.A. and in allowing Lewis a further recovery from H & H. We affirm in part and reverse and render in part.

The cause of action arose on October 21, 1985, when Lewis was hit and severely injured by an H & H truck, driven by its employee, Darrell Haumesser ("Haumesser"), on an oil well drilling site, leased and operated by Exxon U.S.A. in Midland County, Texas. Lewis initially filed suit on April 22, 1986, in Jefferson County, Texas, against H & H, Haumesser, Exxon U.S.A. and Exxon Corp. At the time suit was filed, Lewis was a resident of Ector County, Texas. Exxon Corp., is a New Jersey corporation with its principal place of business in New York. Exxon U.S.A. is headquartered in Harris County, Texas. H & H, a Texas corporation, had its registered agent in Dawson County, Texas, and its driver, Haumesser, was a resident of Martin County, Texas. At or about the time they filed their answers, all of the defendants also filed motions to transfer venue. After the hearing, the Jefferson County District Court transferred the case by order signed on July 24, 1986, to Midland County.

Lewis then amended his pleadings to bring in as additional defendants, J.W. Holt, Jack Holt and George Holt ("Holts"), sole owners and stockholders of H & H, on an alter ego theory. In June 1988, several

months prior to trial, Lewis entered into a settlement agreement with H & H, Haumesser and the three Holts (collectively designated as "H & H Defendants"), by the terms of which the H & H Defendants agreed to pay (and subsequently did pay prior to trial) the sum of $1.2 million to Lewis in settlement of all claims, except that if the jury found negligence and proximate cause as to the H & H Defendants, then they would be liable for at most an additional $10,000.00 of the damages assessed by the jury. It was also agreed that the negligence of the H & H Defendants was to be submitted to the jury for the purpose of determining the percentage of the workers' compensation lien (filed in the case by Aetna Casualty and Surety Company) to be paid by the H & H Defendants, not to exceed $40,000.00. Under the agreement, the H & H Defendants' liability as a result of the trial was thus limited to a maximum of $50,000.00 (the first $10,-000.00 of the amount found against them, plus $40,000.00 on the workers' compensation lien). The H & H Defendants retained no right to recover any of the $1.2 million paid under the agreement.

Prior to the commencement of trial, the Exxon Defendants filed a motion requesting the trial court to dismiss the H & H Defendants from the suit on the grounds that all issues between them and Lewis had been effectively settled by the agreement and there was no need to submit their negligence to the jury, and further requesting that it receive a settlement credit of $1.2 million toward any damages assessed against it pursuant to Tex.Civ.Prac. & Rem.Code sec. 33.014 (Vernon 1986). The motion was denied. The Exxon Defendants then moved the court to sever the settling H & H Defendants from the suit. This motion was also denied. After the commencement of trial on November 14, 1988, but prior to the opening of evidence, Lewis non-suited the three Holts. In answer to the issues submitted to it, the jury found the following percentages of negligence: Lewis, five percent; Exxon U.S.A., thirty-five percent; Exxon Corp., zero percent; H & H, twenty percent; Haumesser, forty percent; and assessed damages at

$1,174,000.00. Prior to entry of judgment on the verdict, Exxon U.S.A. unsuccessfully moved for a $720,000.00 post-verdict settlement credit or in the alternative, a $265,-263.16 post-verdict settlement credit pursuant to Section 33.014.

■ In Lewis' sole point of error, he complains that the Jefferson County trial court erred in failing to find that Exxon Corp. maintained an agency or representative in that county, resulting in a denial of venue in that county and a transfer of the suit to Midland County. The current venue statute requires, with certain exceptions, that all lawsuits are to "be brought in the county in which all or part of the cause of action accrued or in the county of defendant's residence...." Tex.Civ.Prac. & Rem.Code sec. 15.001 (Vernon 1986). One of the exceptions to the general venue requirement, and the one relied on by Lewis in this case, permits a plaintiff to file his suit in any county in which a foreign corporation defendant doing business in this state has "an agency or representative." Tex.Civ.Prac. & Rem.Code sec. 15.037 (Vernon 1986). The burden was on Lewis to make prima facie proof that his suit was maintainable in Jefferson County under the exception in Section 15.037. Tex.R.Civ.P. 87, subds. 2(a) and 3(a). The parties agree that Exxon Corp. is a foreign corporation doing business in Texas. The parties disagree on the question of whether either or both of two Exxon employees were, at the time suit was filed, agents or representatives of Exxon within the meaning of Section 15.037.

■ The trial court (impliedly) found, after the hearing, that neither of the two Exxon employees was an agent or representative of the company within the meaning of the venue statute and ordered a transfer of the case to Midland County, which without question was the primary venue county under the general rule stated in Section 15.001. We must also assume the trial court concluded that Lewis failed to make out a prima facie case on the agency or representative issue as a matter of law. After a thorough review of the deposition testimony of the two Exxon em-

ployees, Hank Crenshaw and Bob Summers, as well as the other depositions attached to the affidavits, we cannot say that the trial court erred, as a matter of law, in determining that Lewis had not made out a prima facie case for venue in Jefferson County under Section 15.037. However, even if the court had so erred, we conclude that the error was harmless since the case was transferred to and tried in Midland County, a county of proper venue. *See Cox Engineering v. Funston Mach. & Supply*, 749 S.W.2d 508, 511 (Tex.App.— Fort Worth 1988, no writ). We reach this conclusion from the language of Tex.Civ. Prac. & Rem.Code sec. 15.064(b) (Vernon 1986), which states:

> On appeal from the trial on the merits, *if venue was improper* it shall in no event be harmless error and shall be reversible error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits [Emphasis added].

With the exception of Section 15.064(b), Chapter 15 of the Texas Civil Practice and Remedies Code, along with Rule 87 of the Texas Rules of Civil Procedure, sets forth the substantive and procedural law to be followed by the trial courts with regard to proper venue and motions to transfer venue. Section 15.064(b), on the other hand, is a directive to the appellate courts on the action to be taken on appeal if it turns out that venue was improper in the ultimate county of trial. Although Section 15.064(b) does not specifically cover the converse, the clear implication is that if it is concluded from the entire record that venue was proper in the county of trial, then the error, if any, of the trial court in which suit was filed, in incorrectly determining the venue question may have been harmless and not reversible.[1] The appellate court should not reverse a judgment on appeal and remand for new trial unless it is determined that the error of law complained of amounted to such a denial of the appellant's rights as was reasonably calculated to cause and

probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1). At the conclusion of the trial in Midland County, the jury found Lewis minimally negligent and awarded him substantial damages. We cannot say from that result that the error, if any, of the Jefferson County trial court in ruling adversely to Lewis on the transfer motions was calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1). Accordingly, Lewis' point of error on the venue question is overruled.

We next consider the points of error raised by Exxon U.S.A. and H & H, all of which are to the effect that the trial court erred in its application of the comparative negligence statutes and the case law on the subject, specifically in its denial of Exxon's motions to sever the H & H Defendants and give full credit toward any judgment rendered against Exxon up to the $1.2 million settlement amount and in failing to apply the proper law to the jury verdict so that Exxon would receive an additional credit and H & H would have no further liability and would, in fact, receive a contribution from Exxon U.S.A. to the extent of Exxon's liability.

The comparative negligence statutes with which we are concerned, formerly Article 2212a, Sections 2(b), 2(d) and 2(e), Tex. Rev.Civ.Stat.Ann., now Sections 33.012, 33.014 and 33.015, Tex.Civ.Prac. & Rem.Code (Vernon 1986), in effect, at the time this suit was filed, are as follows:

Section 33.012. Damages in Proportion.

If there is more than one defendant and the claimant's negligence does not exceed the total negligence of all defendants, contribution must be in proportion to the percentage of negligence attributable to each defendant.

Section 33.014. Settlement: Tort-Feasor Not Party Defendant

If the existence and amount of an alleged joint tort-feasor's negligence are not submitted to the jury because the tort-feasor has paid an amount in settle-

---

1. For an interesting discussion from one point of view of venue appeal and harmless error in the context of the legislative history of the present Texas venue statute, see Price, New Texas Venue Statute: Legislative History, 15 St. Mary's L.J., at 875–880.

ment to a claimant and was not joined as a party defendant or having been joined, was dismissed or nonsuited after settling, each defendant is entitled to deduct from the amount for which he is liable to the claimant a percentage of the amount of the settlement based on the ratio of the defendant's negligence to the total negligence of all defendants.

Section 33.015. Settlement: Tort–Feasor Party Defendant

If an alleged joint tort-feasor settles with a claimant but is joined as a party defendant when the case is submitted to the jury so that the existence and amount of his negligence are submitted to the jury and his percentage of negligence is found by the jury, the settlement is a complete release of the portion of the judgment attributable to him.

H & H and Exxon disagree on whether the agreement between the H & H Defendants and Lewis was a "settlement" within the meaning of that word as used in the statutes in question. H & H strenuously contends that the agreement did not amount to a settlement since by its terms, H & H and its driver remained in the lawsuit, were required to defend and to submit questions concerning their negligence to the jury. Thus, it argues, Section 33.012 applies so that it is entitled to a contribution from Exxon up to Exxon's verdict liability and Lewis cannot recover anything further from either it or Exxon under the "Bradshaw Rule". The latter rule is attributed to the opinion in *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703, 705 (1935), where it was said, "It is a rule of general acceptance that an injured party is entitled to but one satisfaction for the injuries sustained by him." The *Bradshaw* Rule, although not abolished in situations where Section 33.015 does not apply, has been severely modified in its application by the comparative negligence statutes. *Cypress Creek Utility Service Company, Inc. v. Muller*, 640 S.W.2d 860, 867 (Tex.1982).

■ An agreement by which parties reach an understanding in compromise of disputed matters is to be considered a set-

tlement. *Rose v. Pfister*, 607 S.W.2d 587, 590 (Tex.Civ.App.—Houston [1st Dist.] 1980). The agreement between Lewis and the H & H Defendants is entitled, "PARTIAL COMPROMISE, SETTLEMENT, RELEASE, AND INDEMNITY AGREEMENT." It is fairly lengthy and purports to cover both the situation where the Exxon Defendants settle with Lewis before a jury verdict is reached and where the case goes to a jury verdict in the absence of a settlement with Exxon. In the latter event, the H & H Defendants are not only to remain as defendants but are to "actively and diligently defend any cross-actions, counterclaims and/or allegations raised against them[.]" and are to make an election and file the necessary papers to have the percentages of their negligence, if any, determined by the jury. The agreement then provides:

It is further agreed that the payment of ONE MILLION, TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00) to Plaintiff [Lewis] shall not be the final amount of monies that Plaintiff can recover against the H & H Defendants if the jury should find negligence and proximate cause as to these Defendants. However, it is agreed that Plaintiff shall not recover from the H & H Defendants or H & H Trucking, Inc., any additional sum in excess of TEN THOUSAND AND NO/100 DOLLARS ($10,000.00), plus the H & H Defendants' share of the worker's compensation lien up to $40,000.00, as described below.

.  .  .  .  .

The percentage of negligence, if any, found by the jury will be used for the purpose of determining the percentage of the Worker's Compensation lien to be paid by the H & H Defendants. The H & H Defendants will pay their proportionate share of the Worker's Compensation lien as found by the jury verdict. Their proportionate share will be figured by considering only the percentages of negligence of the Defendants as being 100% and in the unlikely event any negligence is found on the Plaintiff, Plaintiff's negligence, if any, will be excluded from con-

sideration of the amount of the worker's compensation lien to be paid to Intervenor. However, regardless of the percentage of negligence assigned to the H & H Defendants by jury verdict, in no event will the H & H Defendants & H & H Trucking, Inc. be required to pay more than $40,000.00 of the Worker's Compensation lien. Thus, if the case is tried to a jury verdict between the H & H Defendants, Lewis and Exxon Corporation and/or Exxon Company, U.S.A., then the H & H Defendants & H & H Trucking, Inc. will never have to pay more than a total of $50,000.00, regardless of the percentage of negligence assigned to them by the jury.

■ The agreement then provides for a complete and final release from Lewis to the H & H Defendants "[i]n consideration for the payment referred to ..." in the preceding portion of the agreement. Even though the H & H Defendants are to remain in the lawsuit and have their percentages of negligence determined by the jury and even though the agreement provides for some contingent liability in addition to the $1.2 million previously paid under it, the agreement embodies a complete understanding in compromise of disputed matters. We conclude that the agreement is a settlement within the meaning of that term in Section 33.014 and 33.015. We further conclude that the agreement was a successful effort to bring the settlement under the provisions of Section 33.015 so that Exxon would not escape liability if found to be negligent, and to avoid having the settlement treated as a "Mary Carter" agreement.

■ The problem lies in the application of the agreement to the jury's verdict in order to determine additional liability, if any, of the H & H Defendants. The agreement provides that if the case is tried to a verdict and negligence and proximate cause are found against the H & H Defendants, their additional liability, regardless of the percentages found against them, is limited to $50,000.00 ($10,000.00 on the negligence liability and $40,000.00 on the compensation lien). It is more than an implication that

under some circumstances, the H & H Defendants may have to pay less than $50,000.00 or nothing. To find the answer, we turn to the provisions relating to a settlement between Lewis and Exxon before verdict:

[In such event] the H & H Defendants & H & H Trucking, Inc. guarantee that Lewis ... shall receive an additional $50,000.00, but only in the event that Lewis recovers less than $400,000.00 in settlement prior to verdict from Exxon Corporation and/or Exxon Company, U.S.A. This guarantee shall be gradually extinguished, on a dollar-for-dollar basis, for every dollar above the sum of $350,000.00 which Lewis receives in settlement prior to verdict from Exxon Corporation and/or Exxon Company, U.S.A., up to the sum of $400,000.00. If Lewis receives $400,000.00 or more in settlement prior to verdict, then the H & H Defendants will pay no additional funds to Lewis. If Lewis ... receive[s] by way of settlement prior to verdict any sum in excess of $400,000.00, then the H & H Defendants & H & H Trucking, Inc. shall have no claim to such excess funds. In no event will the H & H Defendants & H & H Trucking, Inc. be responsible for more than $50,000.00 in additional payment to Lewis....

The intent of the agreement was to keep the H & H Defendants in the suit until either Exxon reached a settlement with Lewis or a verdict was reached, while limiting the H & H Defendants' liability to not more than an additional $50,000.00 over what they had already paid, regardless of the amount recovered by Lewis from Exxon. We can think of no good reason why the H & H Defendants should be worse off if the case went to verdict than they would have been if Exxon had settled prior to verdict. Since Exxon U.S.A. was found by the jury to have been thirty-five percent negligent and damages were assessed at $1,174,000.00, its share of the damages came to $410,900.00, for which amount judgment was given. Because that amount exceeds $400,000.00, the H & H Defendants have no further liability to Lewis under the settlement agreement. Having

previously concluded that the agreement amounted to a settlement, bringing it within the purview of Section 33.015 rather than under Section 33.012, the H & H Defendants are not entitled to contribution from Exxon U.S.A. H & H Defendants' point of error is sustained to the extent that additional damages were adjudged against them.

We turn now to Exxon U.S.A.'s three points of error, the first point being that the trial court erred in denying Exxon a settlement credit for the full $1.2 million paid by the H & H Defendants to Lewis prior to trial, the second being to the effect that the court erred in denying Exxon's motion to sever the H & H Defendants prior to trial, and the third being that the trial court erred in denying Exxon's motion for a post-verdict credit of $720,000.00, or in the alternative, a credit of $265,263.16. It is convenient to consider these points together.

■ Under its first point, Exxon U.S.A. argues that since the agreement between Lewis and the H & H Defendants was a settlement and was not a Mary Carter agreement, the H & H Defendants having received no interest in the amount Lewis hoped to recover from Exxon in exchange for their continued participation in the suit, the H & H Defendants had "no right under Article 8307, Section 6a, of the Texas Workers' Compensation Act or under Chapter 33 of the Texas Civil Practice and Remedies Code to submit its negligence to a jury solely to determine what percentage of a workers' compensation lien it must pay." On the contrary, Exxon asserts an "absolute right" to determine whether it would take a pretrial credit for the full amount of the settlement under Section 33.014 before a settling alleged joint tort-feasor's negligence was submitted to a jury or a percentage reduction under Section 33.015 where the negligence of the settling alleged joint tort-feasor was determined by the jury along with the negligence of the non-settling joint tort-feasor. By filing its pretrial motions, Exxon claims it elected to take credit under Section 33.014 and is entitled to the full settlement credit. In support of its position, Exxon cites *Merit Drilling Company v. Honish*, 715 S.W.2d 87 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), a case in which the non-settling defendant chose not to have the negligence of the settling defendant submitted to the jury; *Singleton v. Crown Central Petroleum Corporation*, 713 S.W.2d 115 [Tex.App.—Houston [1st Dist.] 1985, rev'd, 729 S.W.2d 690 (Tex.1987)], a case in which the settling defendant's negligence was not submitted to the jury and thus, the non-settling defendant was entitled to full credit for the amount of the settlement; and *Browning–Ferris, Inc. v. Mack Trucks, Inc.*, 714 S.W.2d 405 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) a case in which the negligence of the settling defendants was submitted to the jury and as a result, the liability of those defendants was completely released under Section 33.015. At best, these cases stand for the proposition that a non-settling defendant when faced with the prospect that the negligence of a settling defendant may not be submitted to the jury for whatever reason, can elect to have the settling defendant's negligence so submitted by filing a cross-claim against the settling defendant for contribution. When one defendant settles with the plaintiff, the remaining non-settling defendants can elect to submit the settlor's negligence to the jury by cross-filing against the settlor, but it is not error for the trial court not to dismiss the settlor. *Browning–Ferris*, 714 S.W.2d at 407. Section 33.015 is not to be applied only at the option of the non-settling defendant. *Cypress Creek Utility Service Company, Inc.*, 640 S.W.2d at 866.

■ Exxon also asserts that it was prejudicial error for the trial court not to grant its motion to sever the settling H & H Defendants in accordance with Tex.R. Civ.P. 41. Shortly after this motion was filed, the H & H Defendants amended their answer, alleging a cross-action for contribution against the Exxon Defendants in the event of an adverse judgment. Lewis alleged but one cause of action against the various defendants. The fact that under the Lewis/H & H settlement agreement, the percentages of negligence found by the

jury would be utilized to determine the H & H Defendants' workers' compensation liability would not create a new and separate cause of action. Although the trial court has broad discretionary powers in matters of severance under Rule 41, there are limitations. One such limitation is where there is one cause of action against multiple defendants. *Duke v. Merkin*, 599 S.W.2d 877 (Tex.Civ.App.—El Paso 1980, no writ). Another occurs when otherwise severable causes of action are intertwined in facts, issues and subject matter. *S.O.C. Homeowners Association v. City of Sachse*, 741 S.W.2d 542 (Tex.App.—Dallas 1987, no writ). Under such circumstances, both of which apply to this case, severance would have been improper as an abuse of discretion.

Exxon next argues persuasively that the three individual Holts were joint tort-feasors and that when Lewis, having settled with them as part of the H & H Defendants, non-suited them after trial had commenced so that the existence and amount of their negligence was not submitted to the jury, the application of Section 33.014 was triggered so that it became entitled to deduct from the amount for which it was liable to Lewis a percentage of the amount of the settlement ($1.2 million) based on the ratio of its negligence to the total negligence of all defendants. Exxon then indulges in some interesting calculations which, depending on which method is followed, would entitle it to a settlement credit of either $720,000.00 or $265,263.16.

Part of the problem with Exxon's argument lies in the mischaracterization of the three Holts as joint tort-feasors. Section 33.014 refers to "an alleged joint tort-feasor's negligence." Lewis' amended petition merely alleges that the Holts operated H & H Trucking, Inc., as their "alter-ego ... thus making them individually and jointly liable for those acts and omissions alleged ... against ... H & H TRUCKING, INC....." No acts of negligence were specifically alleged against H & H Trucking, Inc., or the Holts, it being alleged only that "Haumesser, while in the furtherance and in the course and scope of

his employment with H & H TRUCKING, COMPANY, J.W. HOLT, JACK HOLT and GEORGE HOLT, negligently failed to keep a proper lookout...." Under these allegations, H & H Trucking, Inc., would be liable, if at all, only on a respondeat superior theory, and the Holts would be liable, if at all, following a finding of liability on the part of H & H Trucking only on a theory of alter ego, neither of which is sufficient to characterize them as "alleged joint tort-feasors" under Section 33.014. Although the term "tort" may have no exact definition, it is generally defined as a civil wrong or breach of duty that the law has imposed independent of contract. 55 Tex.Jur.2d Torts sec. 1 (1964). Respondeat superior is a theory of vicarious liability by which an employer is usually liable for the tortious acts of his employee. *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805 (Tex.1980). The theory of "alter ego" is applied to impose personal liability on individual shareholders for the acts of a corporation where the shareholders have disregarded the corporate entity and have treated the corporation as a mere conduit of their personal business. *Manney & Company v. Texas Reserve Life Insurance Company*, 407 S.W.2d 345 (Tex.Civ.App.—Dallas 1966, no writ). It is based on the assumption that when a party is identical with a corporation, that party should stand liable for the acts of the corporation. *American Petrofina Company of Texas v. Crump Business Forms, Inc.*, 597 S.W.2d 467 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The Holts having never been "alleged joint tort-feasors" and having been non-suited prior to submission of the case to the jury, are not part of the comparative negligence equation.

The results in this case are controlled by *Cypress Creek Utility Service Company, Inc.*, 640 S.W.2d 860. In *Cypress Creek*, there were multiple plaintiffs and defendants, some of whom settled before the case went to the jury. *Cypress Creek*, the non-settling defendant, attempted to elect, prior to submission, to take a dollar for dollar credit for the amount received by one of the plaintiffs in settlement with another defendant, to be applied on

any judgment that might be rendered against it. The jury found *Cypress Creek* eighty percent negligent and the settling defendant twenty percent. The Supreme Court affirmed the judgments of the trial court and court of appeals in holding "that article 2212a Section 2(e) [Section 33.015] requires that a proportional credit rather than a dollar for dollar credit for the amount of a settlement be applied whenever the amount of negligence attributable to a settling tortfeasor is determined by the jury." 640 S.W.2d at 861. Thus, in our case, the existence and the amount of the negligence of the only alleged tort-feasors, Haumesser and H & H, who settled with Lewis, having been submitted to and found by the jury, their settlement, apart from their contractual liability, acts as a complete release of the part of the judgment attributable to them under Section 33.015 and Exxon, U.S.A. is entitled to claim only a proportional credit based on the percentage of negligence attributable to each defendant. Exxon, U.S.A. seems to imply that it is being treated unfairly by not allowing it a severance credit based on the $1.2 million settlement or at least a credit based upon the assumed negligence of the three Holts. The fact remains that Exxon, U.S.A. is in no worse shape than it would have been had there been no settlement. To paraphrase a quotation by Justice Spears in *Cypress Creek,* 640 S.W.2d at 866, if Lewis will be unjustly enriched by receiving a total of more than the jury verdict, it will not be at Exxon's expense. Exxon, U.S.A. does not seek to make the settling H & H Defendants whole but rather to profit from the injustice that the H & H Defendants supposedly experienced. Exxon, U.S.A.'s three points of error are overruled.

The judgment of the 58th District Court of Jefferson County transferring venue to Midland County is affirmed. The judgment of the 238th District Court is affirmed as to the recovery against Exxon, U.S.A. in the amount of $410,900.00 and reversed and rendered as to H & H Trucking Company and Darrell Haumesser, so that Leslie C. Lewis will recover nothing further from these Defendants.

## OPINION ON MOTIONS FOR REHEARING

All parties have filed motions for rehearing. After due consideration, we overrule Exxon's motion for rehearing, overrule H & H's motion and grant Lewis' motion. We now overrule H & H's point of error in its entirety.

Upon a rereading of the settlement agreement between Lewis and the H & H Defendants and further reflection, we have concluded that we erred in interpreting that agreement in a manner and to a result not raised by point of error and not argued by any party, certainly not by the H & H Defendants who were the beneficiaries of that interpretation. It is clear that the provisions relating to the limits on further liability of the H & H Defendants in the two situations, i.e., where Exxon would settle with Lewis before a jury verdict was reached and where the case would go to verdict, are contained in separate paragraphs that can and do stand on their own.

Accordingly, our previous opinion is modified so that the judgment of the 238th District Court of Midland County is affirmed in its entirety.